IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| MILDRED PARKER, | § § § | |
| Plaintiff, | § § | |
| vs. | § § § | Civil Action No. 1:07-CV-041-BI<br>ECF |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | § § § § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

**THIS CASE** is before the court upon Plaintiff's complaint filed February 20, 2007, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff filed a brief in support of her complaint on October 26, 2007, Defendant filed a brief on November 26, 2007, and Plaintiff filed her reply ("Pl. Reply") on January 17, 2008. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I. STATEMENT OF THE CASE

Plaintiff filed an application for disability insurance benefits on December 5, 2002, alleging disability beginning September 1, 1999. Plaintiff's application was denied initially and upon reconsideration. Tr. 17, 32-36, 39-42. Plaintiff filed a Request for Hearing by Administrative Law Judge on August 23, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on December 1, 2005. Tr. 17, 392-420. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 394-410, 416-19. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 411-15. The ALJ issued a decision unfavorable to Plaintiff on March 10, 2006. Tr. 14-29.

In his opinion the ALJ noted that the Plaintiff previously had a hearing before an ALJ who determined that if Plaintiff amended her onset date to September 1, 1999, she would satisfy the "20/40" requirement of the Act. However, Plaintiff's earnings record shows that she last met the special earnings requirement on June 30, 2000, and not June 31, 2001 [sic], as noted in the previous decision. Therefore, for entitlement to Title II benefits, Plaintiff's disability must be shown to have begun as of or prior to June 30, 2000. The ALJ also found that: Plaintiff had not engaged in substantial gainful activity at any time between September 1, 1999, and February 1, 2002. Tr. 18, 22. Prior to June 30, 2000, Plaintiff had "severe" impairments, including left knee replacement, osteoarthritis of the right knee, systemic lupus erythematosus ("SLE"), and osteoarthritis of the first carpal metacarpal ("CMC' or "MCP") joint of her right hand. *Id*. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 20, 22.

The ALJ found that Plaintiff could not return to her past relevant work as a newspaper carrier, floral delivery person, or a parts manager. Tr. 21-22. He noted that Plaintiff was considered an "individual of advanced age" with a high school education. 20 C.F.R. §§ 416.963, 416.964; *Id*.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of sedentary work activity. Tr. 20, 22. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 21-22. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the job of check cashier, with 3,500 jobs in Texas and 50,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 21, 23.

Plaintiff submitted a Request for Review of Hearing Decision/Order on March 31, 2006. Tr. 13. The Appeals Council denied Plaintiff's request and issued its opinion on October 27, 2006, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 7-11. The ALJ's decision, therefore, became the final decision of the Commissioner.

On February 20, 2007, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II. STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 18-19.

## III. DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ rejected the opinion of Plaintiff's treating specialist, Naga Bushan, M.D., a rheumatologist, who opined that Plaintiff's impairments limited her ability to perform repetitive actions with her hands, and that the ALJ failed to apply the appropriate legal standard in finding that Plaintiff acquired skills in her past work which were "transferable" to new sedentary occupations.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

**A.     Whether the ALJ erred in rejecting the opinion of Plaintiff's treating specialist regarding the limitation on use of her hands imposed by her impairments.**

Plaintiff argues that the ALJ erred by rejecting the opinion of Dr. Bushan, a treating specialist regarding the limitations imposed by Plaintiff's impairments. The record indicates that Dr. Bushan completed an RFC questionnaire on November 1, 2005. Tr. 369-75. He indicated that Plaintiff was limited in her ability to perform fingering or fine manipulation to 5% of an 8-hour workday and was limited in her ability to perform handling or grasp manipulation for 30% of an 8-hour workday. Tr. 373. The parties agree that this questionnaire was completed after Plaintiff's last date of insured status. However, Plaintiff argues that Dr. Bushan indicated in this questionnaire that the form described Plaintiff's level of functioning since 1999. Tr. 375. She argues that the ALJ ignored this opinion, implicitly rejecting the opinion of a treating specialist regarding the functional limitations imposed by Plaintiff's impairments without demonstrating good cause for doing so.

Plaintiff argues that this error was prejudicial because the occupation of check cashier requires frequent fingering and handling.

Defendant argues that the ALJ considered Dr. Bushan's medical opinion prior to the expiration of Plaintiff's insured status. He further argues that Dr. Bushan's medical opinion, completed five years after the expiration of Plaintiff's insured status, was not material to Plaintiff's case and that the ALJ therefore did not err.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. Moreover, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 404.1527(e)(1)).

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he declines to

give the opinion of a treating specialist any weight. Pursuant to Soc. Sec. Ruling 96-2p (July 2, 1996) ("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

As noted above, the ALJ is permitted to "discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d 456. SSR 96-2p provides that a medical source statement from a treating source which is well-supported by medically acceptable evidence and which is not inconsistent with other substantial evidence in the record is entitled to controlling weight. *See* SSR 96-2p. This ruling further explains:

> If any of the above factors is not satisfied, a treating source's opinion cannot be entitled to controlling weight. It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.

*Id.* The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citing *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982)).

In this case the ALJ clearly did not give controlling weight to Dr. Bushan's opinions regarding Plaintiff's limitations imposed by her fingering and handling impairments. In failing to give controlling weight, he did not address any of the factors set forth in 20 C.F.R. § 404.1527(d) and *Newton*. Plaintiff argues that the ALJ erred by failing to appropriately justify his failure to give

appropriate weight to the opinions of her treating physician and erred by failing to show good cause for doing so.

The record indicates that Dr. Bushan saw Plaintiff on October 9, 1996. Tr. 304. In his progress note he indicated that Plaintiff's MCP joints, wrists, elbows, and shoulders were nontender with full range of motion. *Id*. He again noted nontender joints on March 8, 2000. Tr. 303. On May 31, 2000, Dr. Bushan noted Plaintiff's complaint of pain in the first CMC joint with a cystic lesion over the base of the thumb over volar aspect. Tr. 299. The other upper and lower extremity joints were nontender, and he indicated that an x-ray of Plaintiff's hands should be performed. *Id*. The x-ray of the right hand indicated arthritic narrowing and mild spurring at the CMC joint of the thumb. Tr. 293. On August 23, 2000, Dr. Bushan noted Plaintiff's complaints of pain in the right first MCP joint and that she was "working very hard in two different jobs." Tr. 292. The other upper and lower extremity joints were nontender. *Id*. Plaintiff's right first CMC joint was injected with Aristospan. *Id*. On November 15, 2000, he noted that Plaintiff was doing better since her last visit and that the previous injection had helped the right thumb. Tr. 291. He opined that there was minimal tenderness in the first CMC joints and that the other upper and lower extremity joints were nontender. *Id*.

A progress note from February 7, 2001, indicates that Plaintiff had fallen and was having significant pain in her right knee. Tr. 287. He noted nontender upper extremity joints. *Id*. X-rays and an MRI of the knee were performed. Tr. 282-83. Plaintiff complained of pain in the right knee and pain in the first CMC joint on the right on May 2, 2001. Tr. 281. Dr. Bushan opined that if Plaintiff continued to have problems with the right first CMC joint, she might need a referral to a hand surgeon for removal of the synovial cyst. *Id*. A progress note from July 25, 2001, indicates that Plaintiff was doing fairly well and was planning a knee replacement in October 2001. Tr. 278. There was no active synovitis in the upper and lower extremity joints. *Id.* On October 16, 2001,

Dr. Bushan noted that Plaintiff had successfully undergone right knee replacement with no postoperative complications. Tr. 275. He noted nontender upper extremity joints. *Id.*

The progress note dated January 9, 2002, indicates that Plaintiff was not doing well, experiencing generalized aching and morning stiffness over the previous month. Tr. 274. Dr. Bushan indicated no numbness or tingling in the extremities with tender proximal interphalangeal and metacarpophlangeal joints, pain in the shoulder on rotation, nontender elbows, and no synovitis of the wrists. *Id*. Dr. Bushan indicated on January 23, 2002, that Plaintiff was not doing well, complaining of increasing pains and fatigue, although her organ function was normal. Tr. 272. He noted no numbness or tingling in the extremities and no active synovitis in the upper extremity joints. *Id*.

On January 31, 2002, Dr. Bushan opined that Plaintiff was improving spontaneously. Tr. 265. The March 21, 2002, progress note indicates that Plaintiff was doing much better, with improved lower extremity edema and nontender joints. Tr. 260. On April 25, 2002, Dr. Bushan noted that Plaintiff was doing quite well since her last visit, with a mild rash over the lower extremities. Tr. 259. There was no active synovitis in the joints. *Id*. Dr. Bushan's progress note dated June 5, 2002, indicates Plaintiff's report of a sore throat and change in her voice. Tr. 256. Plaintiff reported left shoulder pain and limited range of movement in the left shoulder to Dr. Bushan on July 16, 2002. Tr. 244. Dr. Bushan noted on September 19, 2002, that Plaintiff was "doing better overall" since her last visit, although she still had some pain in the left trapezius muscle. Tr. 242. He noted no numbness or tingling in the upper extremities and nontender upper extremity joints. *Id*.

On January 15, 2003, Dr. Bushan noted that Plaintiff was having pain in the right thumb. Tr. 237. Plaintiff was known to have osteoarthritis in this joint. *Id*. Plaintiff had enlarged and tender first CMC joints. *Id*. Plaintiff's elbows and shoulders had full range of motion and were

nontender. *Id.* He treated her right thumb pain with an injection to the first CMC joint. *Id.* A progress note from April 16, 2003, includes Dr. Bushan's indication of nontender upper extremity joints, with tenderness in the left trapezius muscles. Tr. 235. Dr. Bushan treated these trigger points with an injection in the left shoulder girdle. *Id.* On July 16, 2003, Dr. Bushan indicated in his progress note that Plaintiff "is doing quite well," with nontender upper extremity joints and spine. Tr. 232. Dr. Bushan noted Plaintiff's report of migraines and hoarseness of the voice on October 22, 2003. Tr. 229.

Dr. Bushan's progress note of January 19, 2004, indicated that Plaintiff had nontender upper extremity joints and spine. Tr. 226. Dr. Bushan indicated Plaintiff's report of pain in the right hand on July 26, 2004, with numbness in the first, second, and third fingers. Tr. 223. She had nontender finger joints and wrists, with a tender first CMC joint in the right hand. *Id.* He also noted that Plaintiff had full range of motion in the elbows and shoulders. *Id.* Dr. Bushan noted on October 26, 2004, that Plaintiff had been suspected of having carpal tunnel syndrome, with resulting right hand pain, but nerve conduction studies were negative. Tr. 211. Plaintiff was referred to Dr. Patrick F. Molligan who found a bone spur on the right first MCP joint, which was removed. *Id.* Plaintiff no longer had any symptoms. *Id.* The record contains the nerve conduction study performed on August 11, 2004, which resulted in a normal left and right median nerve and a normal right ulnar. Tr. 212-14.

Plaintiff argues that in implicitly rejecting Dr. Bushan's opinion regarding the limitations imposed by her impairments on Plaintiff's ability to finger and handle, the ALJ erred by failing to explain why he did not consider this opinion and by failing to explain what conflicting evidence supported his choice.

In order to prove that she is entitled to disability benefits, Plaintiff must not only prove that she is disabled but that she became disabled prior to the expiration of her insured status. *Anthony*

*v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985). Any impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability. *Owens*, 770 F.2d at 1280. Factors relevant to the determination of the date of disability include "the individual's declaration of when her disability began, her work history, and available medical history." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

It is undisputed that Dr. Bushan's opinion was rendered well after the expiration of Plaintiff's insured status. Even if the ALJ erred by not reviewing the six factors pursuant to Social Security Ruling 96-5p before giving no weight to the treating physician's opinions that Plaintiff was disabled or unable to work, Plaintiff would be required to show prejudice from that error to be entitled to relief. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981).

Plaintiff argues that she has demonstrated prejudice because the ALJ's decision "would have been different had the ALJ considered treating physician Bushan's opinions "that Plaintiff could perform fingering only five percent and handling only 30 percent of the workday." While Dr. Bushan indicated in the form that he completed prior to Plaintiff's hearing that the form "adequately describe[d] your patient's level of functioning since 1999," a review of the record demonstrates that none of Dr. Bushan's treatment records or progress notes reflect any such limitations on functioning during the relevant period. On October 9, 1996, Dr. Bushan indicated that Plaintiff's MCP joints, wrists, elbows, and shoulders were nontender with full range of motion. Tr. 304. He again noted nontender joints on March 8, 2000. Tr. 303. On May 31, 2000, Dr. Bushan noted Plaintiff's complaint of pain in the first CMC joint with a cystic lesion over the base of the thumb over volar aspect but otherwise noted that the upper extremity joints were nontender. Tr. 299. On August 23, 2000, after the expiration of Plaintiff's insured status, Dr. Bushan again noted Plaintiff's complaints of pain in the right first MCP joint and that she was "working very hard in two different jobs." Tr.

292. This evidence does not support Dr. Bushan's indication that Plaintiff's limitations in fingering or handling existed in 1999.

This case must be distinguished from a situation where no contemporaneous medical records exist and where there is uncontroverted evidence as to the severity of the claimant's condition before and after the last date of insured status. *See Ivy*, 898 F.2d at 1046-48 (5th Cir. 1990). In *Ivy* the Fifth Circuit found that an ALJ erred in finding that a claimant had failed to establish the onset of the disabling condition before the last day upon which she met the special earnings requirement of the statute, where contemporaneous medical records were lost but uncontroverted medical evidence and testimony indicated that the claimant's condition was unchanged and the Appeals Council had found that the claimant subsequently met the applicable disability requirements. 898 F.2d 1045 at 1046-48.

Clearly, noncontemporaneous medical records are relevant to the determination of whether onset occurred on the date alleged by the claimant, and it may bear upon the severity of the claimant's condition before the expiration of his or her insured status. *Id.* at 1049 (internal citations omitted). However, a noncontemporaneous opinion by a treating physician, completely unsupported by that physician's own treating records and notes, does not necessarily demonstrate prejudice. Dr. Bushan's own records fail to demonstrate that Plaintiff's condition was disabling during the relevant period and fail to support his later opinion regarding the limitations imposed by Plaintiff's impairments prior to June 30, 2000, when Plaintiff's insured status expired.

Plaintiff relies on *Bradley v. Barnhart*, 2006 U.S. Dist. LEXIS 7311 (N.D. Tex. February 27, 2006). She argues that the ALJ in this case, like the ALJ in *Bradley*, was not "relieved from considering the treating physician's retrospective opinions about [Plaintiff's] fingering and handling limitations simply because his report was prepared after her insured status expired." Pl. Reply at 5. In *Bradley*, however, the treating psychologist completed a medical assessment of the claimant's

ability to perform work-related mental activities and later supplemented his findings and "clarified that [the claimant's] functioning had been at that level since at least December 31, 1992," indicating that he had reviewed his previous evaluation as well as reports from other treating providers before rendering his opinion, and he also opined that the claimant's impairment met or equaled the severity of a listed impairment. 2006 U.S. DIST. Lexis *12-*13. The Court noted that "a retrospective medical diagnosis uncorroborated by contemporaneous medical reports, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment." *Id.* (citing *Likes v. Callahan*, 112 F.3d 189, 190 (5th Cir. 1997)).

In this case the respective medical opinion was not corroborated by any evidence relating to the claimed period of disability. As noted above, Dr. Bushan's progress notes fail to support the indicated limitations in 1999. Dr. Molligan's progress note dated September 15, 2004, notes Plaintiff's complaint of right hand pain with near full wrist and digit range of motion with the exceptions of the base of the right thumb, which is somewhat limited secondary to pain. Tr. 357. Dr. Molligan treated Plaintiff with an injection to the right thumb CMC on September 28, 2004. Tr. 356. Plaintiff ultimately underwent surgery in October 2004. Tr. 354. On November 1, 2005, Plaintiff testified that she had "too much swelling and everything in my hands and joints" and had had such for a "a couple of years ago now." Tr. 405. The medical and lay evidence corroborating Plaintiff's complaints with regard to the use of her hands is dated well after 1999, the year that is noted in Dr. Bushan's 2005 questionnaire form, and well after Plaintiff's onset date of September 1, 1999, and other than the single May 31, 2000, reference in Dr. Bushan's notes to Plaintiff's right thumb pain, such evidence is dated after Plaintiff's date last insured. Dr. Bushan's opinion that Plaintiff's ability to finger and handle was limited since 1999 is not supported by lay or medical evidence in the record. Therefore, both *Likes* and *Bradley* are inapposite.

Because there is no evidence to support Dr. Bushan's assertion that Plaintiff's ability to handle and finger were limited since 1999 to the degrees indicated in his form, Plaintiff cannot show that she was prejudiced by the ALJ's failure to discuss Dr. Bushan's retrospective opinion regarding the limitations imposed by her impairments, and remand is not appropriate.

> **B.** **Whether the ALJ erred by failing to apply the appropriate legal standard in finding that Plaintiff had acquired transferable skills.**

Plaintiff argues that the ALJ erred at step 5 of the sequential evaluation process in finding that she had acquired skills from her past work which were transferable to the sedentary, semi-skilled occupation of check cashier. In this case the ALJ relied upon the testimony of the VE in finding that Plaintiff retained the RFC to perform work which existed in substantial numbers in the economy.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

A claimant's work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. § 404.1565. Transferable skills are those "that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs ." 20 CFR § 404.1568(d). If the claimant has acquired skills through his past work, the Commissioner will consider him to still have those skills

unless the claimant cannot use them in other skilled or semi-skilled work that he can now do. 20 C.F.R. §§ 404.1565(a), 1568(d); Soc. Sec. Ruling 82-41 (February 26, 1979) ("SSR 82-41"). Transferability of skills is most probable or meaningful with jobs where the same or lesser degree of skill is required because people are not expected to do more complex work than they have previously performed. 20 C.F.R. § 404.1568(d); SSR 82-41.

Section 404.1568(b) of 20 C.F.R. defines semi-skilled work, such as the job of check cashier which was identified by the VE, as "work which needs some skills but does not require doing the more complex work duties." 20 CFR § 404.1568(b). If an individual is of advanced age, as Plaintiff was after her 55th birthday, with a severe impairment(s) that limits the claimant to sedentary or light work, the claimant will be found unable to make an adjustment to other work unless the claimant has skills that are transferable to other skilled or semiskilled work. 20 CFR § 404.1568(d)(4). If a claimant is of advanced age and has severe impairments that limit the claimant to no more than sedentary work, the Commissioner will find that the claimant has skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to his or her previous work that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. *Id*.

In this case the ALJ did not specifically find that Plaintiff would require "very little, if any, vocational adjustment." The VE testified that Plaintiff had transferable skills. The VE was examined by the Plaintiff's representative. Plaintiff's representative noted that the VE had testified about "transferable skills" for "an individual of advanced age transferring to sedentary work." Tr. 416. Plaintiff's representative noted that "the jobs would have to be "very similar in tools, work processes, settings, [and] industry" and asked, "All of those jobs that you named, would they take very minimum adjustment?" *Id*. The VE testified that "the tools would be same and similar,. Work

processes of supervision and directing are same and similar. Money reconciliation, cash register, or cash drawer, or bank deposit slips same and similar." *Id.* The VE was questioned by the representative whether the numbers would change, staying in the same industry, specifically, retail. *Id*. The VE testified that the numbers would not change for the check cashier or parts order clerk. *Id*. The VE further testified that in the clerical industry, "the tools would be same and similar, work processes would be same and similar." Tr. 417.

In his opinion the ALJ found that Plaintiff had acquired work skills which could be applied to meet the requirements of semi-skilled work activities of other jobs which exist in significant numbers in the national economy. Tr. 22. He noted that he relied upon the testimony of the VE.

Plaintiff argues that the ALJ did not ask the VE what degree of vocational adjustment Plaintiff would require to perform the check cashier positions. The record demonstrates that Plaintiff's representative specifically questioned the VE as to whether the jobs named "would [ ] take very minimum adjustment." Tr. 416. The VE testified that the tools, work processes, and other skills were same and similar. *Id*.

SSR 82-41 notes that an ALJ must make certain findings of fact and include them in the written decision, including, when a claimant is found to have transferable skills: identification of the acquired work skills; specific occupations to which the skills are transferable; and evidence that the work exists in significant numbers in the national economy. This evidence may be found in VE testimony relied upon by the ALJ. SSR 82-41 does not require an ALJ to make an explicit finding that a claimant of advanced age who has acquired transferable skills can perform the identified work with "very little, if any, vocational adjustment."

Plaintiff argues that this failure demonstrates that the ALJ applied an incorrect legal standard and requires remand. She points to *McQueen v. Apfel*, wherein the Fifth Circuit noted that an ALJ's

-16-

failure to make a specific finding on high marketability, which was required for a claimant aged 60-64 under the regulations in effect at that time. 168 F.3d 152, 155-56 (5th Cir. 1999). In *McQueen* the ALJ had indicated in his decision that the "claimant has work skills which are readily transferable to jobs within his vocational profile" and had relied upon the testimony of the VE, who was asked whether his opinion would change if the claimant was 50 years old. *Id.* at 154-55. The Fifth Circuit noted that "[n]othing indicates that the vocational expert, on whose testimony the ALJ relied, considered § 404.1653(d)'s standards for claimants close to retirement age." *Id*.

However, in this case, the VE was specifically asked whether the jobs named would take "very minimum adjustment." Tr. 416. This case is more like that addressed by the court in *Parnell v. Barnhart*, 2002 U.S. Dist. LEXIS 5535 (N.D. Tex. March 29, 2002), *adopted by Parnell v. Barnhart*, 2002 U.S. Dist. LEXIS 7349 (N.D. Tex. Apr. 24, 2002). In *Parnell* the VE had testified that the claimant, who was of advanced age, possessed skills transferable to a job in a sedentary capacity. 2002 U.S. Dist. LEXIS 5535, *21. The Court noted that the Appeals Council had observed that the job identified by the VE entailed almost the same type of work processes, same setting, and same industry and would involve virtually no vocational adjustment. *Id*. The Court found that substantial evidence supported the ALJ's decision at step 5 and that the ALJ's failure to expressly find that the claimant's skills would transfer with "very little" vocational adjustment was harmless and did not impact the claimant's substantial rights. *Id*. The court finds *Parnell* helpful and *McQueen* inapposite to this case.

In this case the ALJ appropriately did not rely upon the GRIDS at step 5 and relied upon the testimony of the VE in finding that Plaintiff could perform other work which exists in substantial numbers in the economy. The VE was questioned and testified as to the adjustment required in

transferring the skills identified and gained from Plaintiff's past relevant work to the jobs identified by the VE.

The court finds that the ALJ did not apply the wrong legal standard in making his finding at step 5 of the sequential evaluation process. To the extent that the ALJ did not make a specific finding in his decision that Plaintiff would require very little, if any, vocational adjustment to perform the job identified, check cashier, any such alleged error is harmless given that the ALJ relied upon the testimony of the VE, the VE was specifically questioned about the effect that Plaintiff's age would have on her transferability of skills, and the VE testified about the adjustment required.

The court finds that the ALJ did not commit harmful error in evaluating the opinion of Dr. Bushan regarding the limitations imposed by Plaintiff's impairments, did not err in relying upon the testimony of the VE in finding at step 5 that Plaintiff retained the RFC to perform work which exists in the economy, and, therefore, did not err in finding that Plaiantiff was not disabled. The court further finds that the ALJ's opinion is supported by substantial evidence in the record. Therefore, the ALJ's opinion should not be reversed or remanded.

## IV.     CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

Plaintiff having refused consent to having the United States Magistrate Judge conduct all further proceedings in this case, this case is **TRANSFERRED** back to the docket of the United States District Judge.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4(a) of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 10th day of March, 2008.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**